**Cleveland BARRON, et al., Plaintiffs,**

**v.**

**TRANS UNION CORP., Defendant.**

**No. Civ.A. 98–D–704–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 3, 2000.

Jeffery C. Duffey, Montgomery, AL, for plaintiffs.

Joseph A. Fawal, Birmingham, AL, Thomas J. Spina, Birmingham, AL, Bruce S. Luckman, Mark E. Kogan, Timothy P. Creech, Philadelphia, PA, for defendant.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Trans Union Corp.'s ("Defendant") Motion For Summary Judgment ("Mot."), together with a Memorandum Of Law In Support Of Motion For Summary Judgment ("Mem."), filed June 3, 1999. On June 21, 1999, Plaintiffs filed a Response To Motion For Summary Judgment ("Resp."). Defendant filed a Reply on July 2, 1999. On December 14, 1999, Plaintiffs filed a Supplemental Response To Defendant's Motion For Summary Judgment ("Suppl.Resp."). Defendant filed a Reply To Plaintiffs' Supplemental Response ("Suppl.Reply") on December 30, 1999. After careful consideration of the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendant's Motion For Summary Judgment is due to be granted in part and denied in part.

### I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 15 U.S.C. § 1681, *et seq.* (The Fair Credit Reporting Act). The Parties do not contest personal jurisdiction or venue.

### II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court construes the evidence and factual inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to deter-

mine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing

that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## III. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs Cleveland Barron and Susan Barron ("Mr. Barron" and "Mrs. Barron," respectively, or, collectively "Plaintiffs") are husband and wife. (Compl.¶ 1.) Defendant is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f).[1] (Resp., Ex. 4.) Defendant prepares, sells and distributes "consumer reports" as defined in 15 U.S.C. § 1681a(d).[2] (Compl.¶ 7.)

Between approximately January 1994 and June 1998, Defendant prepared and provided consumer reports on Mr. Barron to eleven businesses where Mr. Barron was applying for credit either individually or jointly with Mrs. Barron. (Resp., Ex. 3;

---

1. "Consumer reporting agency" is defined as follows:

 [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

 15 U.S.C. § 1681a(f).

2. "Consumer report" means the following:

[A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
(A) credit or insurance to be used primarily for personal, family, or household purposes;
(B) employment purposes; or
(C) any other purpose authorized under section 1681b of this title.
15 U.S.C. § 1681a(d).

Mem., Ex. A.) Plaintiffs contend that the following two entries in each of Mr. Barron's consumer reports are inaccurate: (1) a state civil judgment allegedly entered in April 1994 against Mr. Barron and in favor of QHC of Alabama, Inc., in the amount of $34,184.00 ("Civil Judgment"); and (2) a Sears credit card account, indicating that Sears "charged off as bad debt" $822.00 allegedly owed by Mr. Barron ("Sears Account"). (Resp. at 5, Ex. 3). Plaintiffs have submitted court documents, which indicate that the individual against whom the Civil Judgment was entered is not Mr. Barron, but rather is another individual with the same last name. (Suppl.Resp., Ex. 1; Mem., Ex. A.) Plaintiffs also have submitted a photocopy of Mr. Barron's Sears' credit card, which bears an account number different from the one listed on Mr. Barron's consumer reports. Plaintiffs further contend that Mr. Barron has never applied for or received the Sears Account listed in his consumer reports. (Mem., Ex. A.) As a result of the alleged inaccurate Civil Judgment and Sears Account on Mr. Barron's consumer reports, Plaintiffs were denied credit. (Resp., Ex. 3.)

Plaintiffs, through their attorney, wrote letters to Defendant disputing the accuracy of the Civil Judgment and Sears Account on Mr. Barron's consumer reports. The letters were dated February 1, 1994, April 19, 1994, June 1, 1994, September 12, 1994 and November 7, 1994. (Mem., Ex. A.) In his Affidavit, Mr. Barron further asserts that

> [s]ubsequent to my attorney writing letters to [Defendant] trying to straighten out my [consumer] report[,] I contacted [Defendant] by telephone numerous times and was connected to the automated telephone system to make my complaints. The last time I recall con-

tacting [Defendant] by telephone complaining about the erroneous [Civil Judgment] and [Sears Account] on my [consumer report] was in the fall of 1997. I was trying to get [Defendant] to correct the [consumer] report. I was only able to talk to a "live" person one time. I was told [Defendant] would let me know in 6 weeks and I never heard anything back from [Defendant].

(Resp., Ex. 1.)[3]

Defendant responded to Plaintiffs' communications, most recently in a letter dated November 25, 1994. Therein, Defendant stated that it "investigated the information [Mr. Barron] has disputed regarding his/her credit profile" and that "[t]he disputed creditor(s) have confirmed that the information is being reported accurately...." (Mem., Ex. B.) In obtaining consumer credit information from which Defendant prepares consumer reports, Defendant "encourage[s]" creditors to "adopt" the "Metro Consumer Reporting Format." (Suppl.Reply, Ex. A.) Defendant further "encourage[s]" creditors to "supply full identifying information when requesting consumer reports ... and when reporting ... data to [Defendant]." (*Id.*) Defendant defines "full identifying information" as "[f]irst name, last name, and middle initial," "[f]ull street address," "[z]ip code," "[y]ear of birth," "[a]ny general designator, such as Jr., Sr., or III," and "[s]ocial security number." (*Id.*)

Plaintiffs filed a one-count Complaint on June 24, 1998, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.* Plaintiffs categorize their claims against Defendant as follows: "(1) that [ ][D]efendant failed to follow reasonable procedures to assure

---

**3.** Defendant urges the court not to consider Mr. Barron's Affidavit, in particular Mr. Barron's statement that he contacted Defendant by telephone in 1997. Defendant argues that Mr. Barron's Affidavit "contradict[s]" Plaintiffs' "earlier interrogatory answers." (Reply at 8.) The court disagrees. In answering Defendant's interrogatories, Plaintiffs state that they "do not recall the specific dates of tele-

phone calls." (Mem., Ex. A (No. 6).) In viewing the evidence in the light most favorable to Plaintiffs, the court finds that Mr. Barron's Affidavit is more in the nature of a clarification than a contradiction. Mr. Barron's credibility is, of course, a jury question, and Defendant will have an opportunity to cross-examine Mr. Barron regarding the statements in his Affidavit.

maximum possible accuracy of information concerning [P]laintiffs about whom a credit report related," in violation of 15 U.S.C. § 1681e(b); and "(2) that [ ][D]efendant failed to reinvestigate and to delete inaccurate information once [ ][P]laintiffs complained about such," in violation of 15 U.S.C. § 1681i. (Suppl.Resp. at 1; Compl. ¶ 8.) Plaintiffs demand a jury trial and request compensatory damages, punitive damages, an injunction prohibiting Defendant "from any violation of the [FCRA]," attorney's fees and costs. (Compl. at 2.)

## IV. DISCUSSION

Defendant asserts the following four grounds in support of its Motion For Summary Judgment: (1) that the FCRA's two-year statute of limitations bars Plaintiffs' claims arising on or before June 23, 1996 (Mem. at 1–2, 4–5); (2) that Plaintiffs' claims under 15 U.S.C. § 1681e(b) fail as a matter of law because Defendant "verified" the Sears Account "as accurate" (*id.* at 2); (3) that Mrs. Barron lacks standing to bring a lawsuit against Defendant under the FCRA (*id.* at 1); and (4) that "Plaintiffs' claims for punitive damages lack factual and legal merit." (*Id.* at 2, 5.)

Regarding Defendant's first and third contentions, the court agrees that the statute of limitations bars Plaintiffs' claims arising on or before June 23, 1996 and agrees that Mrs. Barron lacks standing as to some, but not all, of the claims. However, the court disagrees that Defendant is entitled to summary judgment on its second and fourth contentions.

### A. *The FCRA's Purpose And Provisions*

Congress enacted the FCRA in order to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. . . ." 15 U.S.C. § 1681(b); *see also Yang v. Government Employees Ins. Co.,* 146 F.3d 1320, 1322 (11th Cir. 1998) ("The FCRA seeks to promote the

credit reporting industry's responsible dissemination of accurate and relevant information.") Plaintiffs seek recovery under 15 U.S.C. §§ 1681e(b) & 1681i of the FCRA. (Suppl.Resp. at 1.) Section 1681e(b) states that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i sets out the procedures that a consumer reporting agency must follow when a consumer "notifies" it "directly" of inaccurate information contained in a consumer report. 15 U.S.C. § 1681i(a)(1). For example, § 1681i(a)(1)(A) states that a consumer reporting agency "shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file . . . before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer." 15 U.S.C. § 1681i(a)(1)(A).

### B. *Statute Of Limitations*

Defendant raises the affirmative defense of statute of limitations. (Ans., "Seventh Affirmative Defense"; Mem. at 1–2, 4–5.) Under the FCRA, "[a]n action to enforce any liability . . . may be brought . . . within two years from the date on which the liability arises. . . ." 15 U.S.C. § 1681p. Under 15 U.S.C. § 1681e(b), liability arises when the consumer reporting agency issues an inaccurate consumer report. *See Wilson v. Porter, Wright, Morris & Arthur,* 921 F.Supp. 758, 759–60 (S.D.Fla.1995); *see also Hyde v. Hibernia National Bank in Jefferson Parish,* 861 F.2d 446, 450 (5th Cir.1988) (holding that "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitation applies"). Under 15 U.S.C. § 1681i, liability arises when the consumer reporting agency "allegedly violate[s] its duty under the FCRA to reinvestigate." *Williams v. Colonial Bank,* 826 F.Supp. 415, 419

(M.D.Ala.1993), *aff'd*, 29 F.3d 641 (11th Cir.1994).

First, because Plaintiffs' Complaint was filed on June 24, 1998, Defendant asserts that Plaintiffs' claims under 15 U.S.C. § 1681e(b), which arise on or before June 23, 1996, are barred by the statute of limitations. (Mem. at 4–5.) In response, Plaintiffs essentially concede that summary judgment is appropriate as to these claims. (Resp. at 6.) Under § 1681p and *Wilson, supra*, it is clear that Plaintiffs' claims arising from the consumer reports on Mr. Barron, which were disclosed to creditors two years prior to the filing of this lawsuit, are time barred. Accordingly, the court finds that summary judgment is due to be granted on Plaintiffs' § 1681e(b) claims arising on or before June 23, 1996.

However, Plaintiffs emphasize that their § 1681e(b) claims arising on or after June 24, 1996 are not barred by the statute of limitations. The court agrees, and Defendant does not argue to the contrary. Thus, the court finds that Plaintiffs' § 1681e(b) claims pertaining to the consumer reports on Mr. Barron issued to the following businesses are not time barred: (1) Capitol Chevrolet/GMAC, issued in January 1997; (2) Mortgage Corporation of the South, issued in October 1997; (3) American General Finance, issued in November 1997; and (4) the Alabama State Employees' Credit Union, issued in June 1998. (Resp. at 6–7.)

Second, Defendant asserts that, under 15 U.S.C. § 1681i, Plaintiffs are barred from bringing claims based on communications with Defendant raising a dispute about the accuracy of the Civil Judgment and Sears Account. (Mem. at 5.) Namely, Defendant refers to the five letters sent by Plaintiffs' counsel to Defendant, which are dated February 1, 1994, April 19, 1994, June 1, 1994, September 12, 1994 and November 7, 1994, and to which Defendant responded in a letter dated November 25, 1994. (Mem. at 4–5, Exs. A & B.) Plaintiffs do not dispute this portion of Defendant's argument. (Resp. at 6–7.)

Accordingly, the court finds that summary judgment is due to be granted in favor of Defendant on Plaintiffs' 15 U.S.C. § 1681i claims arising from Plaintiffs' 1994 letters and Defendant's November 1994 response, wherein Defendant declined to delete the Civil Judgment and Sears Account from Mr. Barron's consumer report.

Third, Defendant argues that Plaintiffs' "dispute communications ceased in November, 1994" and, thus, the statute of limitations defense eliminates Plaintiffs' § 1681i claims. (Mem. at 2.) Plaintiffs disagree, as does the court. Mr. Barron has stated that, "numerous times" after Defendant's November 25, 1994 letter and as recent as "the fall of 1997," he called Defendant and lodged disputes about the alleged continued inaccuracies in his consumer reports, to which Defendant failed to respond. (Resp., Ex. 1.) Defendant's alleged failure to reinvestigate a dispute made in "the fall of 1997" or after June 23, 1996 would be within two years of the date Plaintiffs brought this action. Thus, the court finds that Plaintiffs have presented evidence of communications occurring within the two-year statute of limitations. Accordingly, the court finds that Plaintiffs have raised a factual dispute as to whether Mr. Barron "notifie[d]" Defendant "directly" of his dispute and whether Defendant failed to reinvestigate. 15 U.S.C. § 1681i(a)(1)(A); *see also Whelan v. Trans Union Credit Reporting Agency*, 862 F.Supp. 824, 833 (E.D.N.Y.1994) (noting that "the FCRA requires that the information be conveyed by the consumer directly to the credit reporting agency"); *Wiggins v. Equifax Services, Inc.*, 848 F.Supp. 213, 220 (D.D.C.1993) (In denying the consumer reporting agency's motion for summary judgment, the court noted that a disputed fact existed concerning whether the consumer complained directly to the consumer reporting agency, "a requirement for liability under § 1681i(a)."). Thus, summary judgment is due to be denied on Plaintiffs' § 1681i claims pertaining to alleged liabilities arising after June 23, 1996.

C. *Defendant's Verification of the Disputed Sears Account*

 Defendant next asserts that Plaintiffs cannot sustain a claim under 15 U.S.C. § 1681e(b) based on the disputed Sears Account because Defendant verified that the Sears Account was "accurate." (Mem. at 2.) The court, however, finds that summary judgment is not appropriate as to this claim.

To establish a "prima facie violation" under 15 U.S.C. § 1681e(b),

> a consumer must present evidence tending to show that a credit reporting agency prepared a report containing "inaccurate" information. If he [or she] fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation ..., and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency. The Act, however, does not make reporting agencies strictly liable for all inaccuracies. The agency can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures, which will be a jury question in the overwhelming majority of cases. Thus, prior to sending a [§ 1681e(b) ] claim to the jury, a credit reporting agency can usually prevail only if a court finds, as a matter of law, that a credit report was "accurate."

*Cahlin v. General Motors Acceptance Corp.,* 936 F.2d 1151, 1156 (11th Cir.1991) (internal footnotes omitted); *see also Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995).

 Plaintiffs have satisfied their initial burden, because Mr. Barron denies that he owned the Sears Account listed in his consumer reports. Therefore, Mr. Barron contends that he could not have incurred the alleged debt. (Resp., Ex. 1; Mem., Ex. A.) Accordingly, the relevant question now becomes whether Defendant's procedures for verifying the accuracy of the Sears Account were reasonable. "The standard of conduct by which the trier of fact must judge the adequacy of [consumer reporting] agency procedures is what a reasonably prudent person would do under the circumstances." *Thompson v. San Antonio Retail Merchants Association,* 682 F.2d 509, 513 (5th Cir.1982). Moreover, evaluating the reasonableness of a consumer reporting agency's procedures "involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy. Under this standard a plaintiff need not introduce direct evidence of unreasonableness of procedures: In certain instances, inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures...." *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 51–52 (D.C.Cir. 1984) (internal citations omitted).

It is not clear from the record the precise method or methods Defendant used to verify the accuracy of the Sears Account information contained in Mr. Barron's consumer reports. In regard to the Sears Account, Defendant's November 25, 1994 letter to Plaintiffs states that "[t]he disputed creditor(s) have confirmed that the information is being reported accurately...." (Mem., Ex. B.) Defendant also has submitted evidence that it "encourage[s]" creditors to use the "Metro Consumer Reporting Format." (Suppl.Reply, Ex. A.) Hence, it appears that Defendant relies primarily on creditors to provide it with accurate consumer credit information. On the other hand, Plaintiffs contend that Defendant failed to verify basic information and that this failure was unreasonable. Plaintiffs point to the fact that Mr. Barron's account number with Sears is different than the one referred to in his consumer reports. (Resp., Ex. 1; Mem. Ex. A.) In other words, Plaintiffs contend that the alleged inaccurate consumer reports themselves "can fairly be read as evidencing unreasonable procedures." *Stewart,* 734 F.2d at 52. The court agrees with Plaintiffs. In following *Cahlin, supra,* the court finds that whether Defendant had in place reasonable procedures to detect disparities in credit account numbers is a question for the jury, not the court. *See* 936 F.2d at

1156. The court cannot say, as a matter of law, that relying on creditors for accurate consumer credit information is a reasonable procedure. *See Bryant v. TRW, Inc.,* 689 F.2d 72, 77–78 (6th Cir.1982) (rejecting the consumer reporting agency's argument that the erroneous information in the plaintiff's consumer report was furnished by the creditor and that, under § 1681e(b), "all it had to do was report accurately whatever information the creditors furnished").

Nevertheless, Defendant argues that "it is entitled as a matter of law to rely on the information reported by Sears absent notice" that either Mr. Barron's Sears Account "was inaccurately reported" or that "the source of the information, Sears, was unreliable." (Reply at 4.) However, the court finds that, contrary to Defendant's assertion, a factual dispute exists as to whether Defendant was on notice. Namely, as discussed in Section IV.B. above, Plaintiffs have produced evidence that Mr. Barron contacted Defendant "numerous times," as recently as "the fall of 1997," to dispute the accuracy of the Sears Account in his consumer reports. (Resp., Ex. 1.) Accordingly, the court finds that summary judgment is due to be denied on Plaintiffs' § 1681e claims pertaining to the Sears Account on Mr. Barron's consumer reports.

### C. Standing

Defendant argues that Mrs. Barron lacks standing to pursue a claim under the FCRA. (Mem. at 1; Reply at 3.) Namely, Defendant states that the disputed Civil Judgment and Sears Account were not "in any way attributed to [Mrs.] Barron." (Reply. at 3.) Moreover, Defendant asserts that Mrs. Barron "never reported the disputed accounts on her report and she does not claim otherwise. Further, Mrs. Barron was granted credit on each occasion she applied." (Mem. at 1.) In response, Plaintiffs do not dispute that Mrs. Barron's claims arise from the alleged errors in the consumer reports on Mr. Barron, not an error in Mrs. Barron's consumer report(s). However, Plaintiffs assert that Mrs. Barron has standing to join with Mr.

Barron in this action because she has suffered "injuries" that "flow directly from a denial of joint credit or individual credit for [Mr. Barron]." (Resp. at 9.)

The court agrees with Plaintiffs that individuals other than the subject of a consumer report can have standing to bring a lawsuit under the FCRA. *See* 15 U.S.C. § 1681a(d) (defining consumer report as "any . . . communication . . . bearing on a consumer's credit worthiness, credit standing, credit capacity. . . ."); *see also Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 47 (D.C.Cir.1984) (holding that, if the facts at trial demonstrated that the wife was denied credit based on an inaccuracy in her husband's consumer report, then "that inaccuracy harmed her" so that she would have a cause of action under the FCRA). However, in order to have standing under the FCRA, the disputed consumer report must "relate[ ]" to the individual bringing suit. *Wiggins,* 848 F.Supp. at 226; *see also Williams v. Equifax Credit Information Serv.,* 892 F.Supp. 951, 955 (E.D.Mich.1995) (The FCRA "provide[s] standing to a party when a credit report damages that party's individual credit worthiness. It does not provide standing to a party who[se] injuries are merely derivative of the injury to another party's credit worthiness.").

Of the four credit reports at issue, *see supra* at page 1294, the court finds that Mrs. Barron has standing only as to the claim pertaining to the denial of credit with Mortgage Corporation of the South. The evidence demonstrates that Plaintiffs jointly applied for a consumer loan with Mortgage Corporation of the South and that credit was denied based upon the alleged inaccurate Civil Judgment and Sears Account in Mr. Barron's consumer report. (Mem., Ex. A; Resp., Exs. 1, 2 & 3.) Because Plaintiffs were denied joint credit, the court finds that Mrs. Barron was affected by Mr. Barron's consumer report and, thus, the consumer report relates to her. As in *Koropoulos,* Mr. Barron's consumer report had a negative bear-

ing on Mrs. Barron's creditworthiness. 734 F.2d at 47. In other words, Mr. Barron's consumer report constituted a "communication ... bearing on" Mrs. Barron's ability to obtain credit.[4] 15 U.S.C. § 1681a(d). Accordingly, Defendant's Motion For Summary Judgment is due to be denied on Defendant's contention that Mrs. Barron lacks standing to sue based on Mortgage Corporation of the South's denial of Plaintiffs' joint credit application.

However, the court finds as a matter of law that the remaining three consumer reports on Mr. Barron furnished to Capitol Chevrolet/GMAC, American General Finance and the Alabama State Employees' Credit Union do not relate to Mrs. Barron's creditworthiness. First, Mr. Barron individually filled out a "Lease Application" with Capitol Chevrolet/GMAC on January 2, 1997.[5] (Resp., Ex. 3.) He was not applying for joint credit with Mrs. Barron and her name is not mentioned or referred to on the Lease Application.[6] (*Id.*) Second, when Mr. Barron was denied credit with American General Finance in November 1997, his application indicates that he applied for credit for an "individual account." (*Id.*) There is no information pertaining to Mrs. Barron on the application or in the notice denying credit from American General Finance. (*Id.*) Third, Mr. Barron's application for credit with the Alabama State Employees' Credit Union and the "Adverse Action Form" from the Alabama State Employees' Credit Union to Mr. Barron likewise do not refer to Mrs. Barron. Furthermore, in all three instances credit was denied based on the Civil Judgment and the Sears Account contained in Mr. Barron's consumer reports. Neither the Sears Account nor the Civil Judgment reference Mrs. Barron.[7] (Resp., Ex. 3.)

Therefore, based on the foregoing, the court finds that Plaintiffs have failed to raise a genuine issue of material fact as to Mrs. Barron's standing to join Mr. Barron in these three claims. Accordingly, summary judgment is due to be granted in favor of Defendant on its contention that Mrs. Barron lacks standing to sue based on Mr. Barron's alleged inaccurate consumer reports, which caused Capitol Chevrolet/GMAC, American General Finance and the Alabama State Employees' Credit Union to deny Mr. Barron credit.

### D. Punitive Damages

Finally, Defendant claims that it is entitled to summary judgment on the issue of punitive damages because no evi-

---

4. The court notes that it deems inconsequential the fact that, after Plaintiffs were denied joint credit, Mrs. Barron qualified for credit on her own. (Resp., Ex. 3.) The fact remains that Mrs. Barron initially suffered an injury and was impaired in her ability to secure joint credit based on alleged false information in Mr. Barron's consumer report.

5. On the Lease Application, Mr. Barron checked "individual credit," which means that he was "applying for credit in [his] own name and relying on [his] own income or assets and not the income or assets of another person as the basis for repayment of the credit requested." (Resp., Ex. 3.)

6. On the Lease Application, Mr. Barron checked "individual credit," which means that he was "applying for credit in [his] own name and relying on [his] own income or assets and not the income or assets of another person as the basis for repayment of the credit requested." (Resp., Ex. 3.)

7. The court notes that the facts surrounding Mr. Barron's attempts to obtain credit from Capitol Chevrolet/GMAC, American General Finance and the Alabama State Employees' Credit Union are distinguishable from *Conley v. TRW Credit Data*, 381 F.Supp. 473 (N.D.Ill. 1974), cited by Plaintiffs. (Resp. at 9.) In *Conley*, the court found that the husband's consumer report related to his wife's creditworthiness primarily for two reasons. First, the husband and wife jointly applied for and were denied credit. 381 F.Supp. at 473–474. Second, the husband's consumer report contained financial information about the wife. *Id.* Here, to the contrary, Mr. Barron individually applied for credit at Capitol Chevrolet/GMAC, American General Finance and the Alabama State Employees' Credit Union. Additionally, there is no evidence that the alleged false information in Mr. Barron's consumer reports upon which these three businesses relied pertained to or involved Mrs. Barron.

dence exists that Defendant acted willfully. (Mem. at 5.) However, Plaintiffs argue that the evidence demonstrates that Defendant, at the very least, "acted with reckless disregard to the rights of [ ][P]laintiffs...." (Suppl.Resp. at 3.) For the reasons that follow, the court finds that a jury question exists on the issue of punitive damages.

A consumer is entitled to punitive damages when the evidence demonstrates that the consumer reporting agency "willfully fail[ed]" to follow the FCRA's requirements. 15 U.S.C. § 1681n. If a consumer reporting agency commits a "willful violation" under either 15 U.S.C. § 1681e(b) or 15 U.S.C. § 1681i, punitive damages may be imposed. *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir. 1986). As explained in *Stevenson v. TRW, Inc.*, 987 F.2d 288 (5th Cir.1993), "[t]o be found in willful noncompliance, a defendant must have 'knowingly and intentionally committed an act in conscious disregard for the rights of others.' Although malice or evil motive is not necessary to satisfy § 1681n, there must have been a willful violation." *Id.* at 294 (citations omitted). For example, at least one court has found that a consumer reporting agency's haphazardness in verifying consumer credit information was sufficient to support an award of punitive damages. *See Collins v. Retail Credit Co.*, 410 F.Supp. 924, 932 & 933–34 (E.D.Mich.1976) (finding that the issue of punitive damages was properly submitted to the jury where the evidence demonstrated "willful and reckless wrongdoing"; the consumer reporting agency's "procedures and techniques in investigating, disclosing, and reporting were inexact and indicated a reckless disregard and indifference for the accuracy of the accusations contained in the report.").

Based on the foregoing, the court must decide the following two issues: first, whether there exists disputed facts that Defendant willfully failed to follow reasonable procedures to ensure that Mr. Barron's consumer reports were accurate, in violation of 15 U.S.C. § 1681e(b); and, second, whether there exists disputed facts that Defendant willfully failed to investigate when Mr. Barron continued to complain about the alleged inaccurate information in his consumer reports, in violation of 15 U.S.C. § 1681i. The court finds that Plaintiffs have raised genuine issues of material facts as to both issues, thus, precluding summary judgment.

First, in moving for summary judgment on Plaintiffs' § 1681e(b) punitive damages request, Defendant has submitted evidence of its efforts to obtain accurate consumer information from creditors, such as encouraging creditors to use the Metro Consumer Reporting Format. (Suppl.Reply, Ex. A.) On the other hand, Plaintiffs have submitted court documents, which reflect that, despite Defendant's efforts, the social security number of the individual against whom the disputed Civil Judgment was entered is not Mr. Barron's social security number.[8] (Suppl.Resp., Ex. 1.) Plaintiffs also have presented evidence that Mr. Barron's Sears Account number was not the number listed on his consumer reports. (Resp., Ex. 1; Mem., Ex. A.) Defendant's submission simply does not change the fact or explain why two seemingly basic identifying numbers (i.e., a social security number and a credit card account number) were incorrectly attributed to Mr. Barron. *See Thompson*, 682 F.2d at 511, 513 (noting that "[t]he social security number is the single most important identifying factor for credit-reference purposes"). Contrary to Defendant's arguments, which the court has carefully considered, the court cannot say as a matter of law that no reasonable jury could find that the alleged errors in Mr. Barron's consumer reports did not result from a willful failure to follow reasonable procedures in preparing said reports.

---

8. Mr. Barron's social security number is correctly reflected on his consumer reports. (Resp., Ex. 2.)

Second, under 15 U.S.C. § 1681i, Plaintiffs have submitted evidence that Mr. Barron contacted Defendant by telephone as recent as the "fall of 1997." (Resp., Ex. 1.) In that communication, Mr. Barron states that he again disputed the alleged erroneous Civil Judgment and Sears Account and that Defendant failed to act. (*Id.*) Based on Mr. Barron's representation that Defendant ignored his dispute, the court finds that a question of fact exists as to whether Defendant willfully failed to investigate the dispute.[9]

In sum, the court finds that disputed issues of fact exist on the issue of willfulness, thus, entitling Plaintiffs to present this issue to the jury. At the very least, disputed evidence exists as to whether Defendant acted with a "reckless indifference" to Plaintiffs' "rights" under the FCRA. *Collins*, 410 F.Supp. at 934. Accordingly, summary judgment is due to be denied on Defendant's Motion For Summary Judgment on the issue of punitive damages.

## V. ORDER

For the foregoing reasons it is CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment be and the same is hereby GRANTED in part and DENIED in part as follows:

(1) Defendant's Motion For Summary Judgment based on the affirmative defense of statute of limitations be and the same is hereby GRANTED to the extent that Plaintiffs are barred from pursuing their FCRA claims with liabilities arising on or before June 23, 1996;

(2) Defendant's Motion For Summary Judgment on Plaintiffs' claim under 15 U.S.C. § 1681e(b) on the ground that Defendant verified as accurate the Sears Account be and the same is hereby DENIED;

(3) Defendant's Motion For Summary Judgment on the ground that Plaintiff Su-

san Barron lacks standing to bring a lawsuit under the FCRA be and the same is hereby GRANTED in part and DENIED in part; Plaintiff Susan Barron may proceed to trial only on her claim concerning the denial of credit by Mortgage Corporation of the South; and

(4) Defendant's Motion For Summary Judgment on Plaintiffs' request for punitive damages be and the same is hereby DENIED.

9. The court emphasizes that its duty at this juncture is not to weigh the evidence or question its veracity, *see Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; rather, the court must only eliminate claims upon which no rational jury could find for Plaintiff. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.