Denise M. RICHARDSON and Robert L. Richardson, Plaintiffs,

v.

FLEET BANK OF MASSACHUSETTS, Equifax Credit Information Services, Experian, Trans Union and Portfolio Recovery Associates, LLC., Defendants.

No. Civ.A. 99–30094–FHF.

United States District Court, D. Massachusetts.

Aug. 10, 2001.

Lawrence J. Farber, Allan K. Cook, Amherst, MA, for Plaintiffs.

David B. Wilson, Robinson & Cole, Boston, MA, John J. Friedline, Mara McRae, Kilpatrick Stockton, Atlanta, GA, Suzanne Q. Feldman, Donn A. Randall, Sally & Fitch, Boston, MA, Richard J. Poliferno, Long & Houlden, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

FREEDMAN, Senior District Judge.

### I. INTRODUCTION

In this action, the plaintiffs, Denise M. Richardson and Robert L. Richardson

("plaintiffs") allege that the defendant, Equifax Credit Information Services ("Equifax")[1] violated the Fair Credit Reporting Act ("FCRA"), *see* 15 U.S.C. §§ 1681, *et seq.*, and the Massachusetts Consumer Credit Reporting Act ("MCCRA"), *see* Mass.Gen.Laws ch. 93, § 50, *et seq.* In addition, the plaintiffs bring several other statutory and common law claims. Now before the Court is the defendant's motion for summary judgment.

## II. BACKGROUND

In April 1988, the plaintiffs obtained a $50,000 equity loan from Shawmut Bank of Hampshire County ("Shawmut"). Over the next four years, they attempted to pay down the principal by including additional money with their minimum monthly obligations. But in 1992, during an attempted refinancing, the plaintiffs discovered that Shawmut had not credited their accounts with the extra payments. Subsequently, the plaintiffs initiated a lawsuit against Shawmut over its allegedly inaccurate accounting methods, and settled the case in December 1994. In consideration of the plaintiffs' release of their claims, Shawmut released them from the remaining $20,000 on the loan, and agreed that no derogatory information about them or their claim against the bank would be reported to any credit reporting agency. However, Shawmut classified the lost $20,000 as a "charge-off," and its debt collectors attempted to collect the unpaid balance approximately one year after settling the case. After the plaintiffs complained to Shawmut, the bank issued a letter to the plaintiffs on December 1, 1995 stating that it would notify the appropriate credit reporting agencies of its error, and that the comments regarding their account, No.

700170000015362 ("700 account"), would thereafter read "paid as agreed."

After Shawmut was acquired by Fleet Bank ("Fleet") in January 1996, Denise Richardson ordered copies of credit reports to confirm that Shawmut had removed any derogatory information. Instead, she learned that Fleet was reporting the discharged Shawmut mortgage as a charge-off. In May 1996, the plaintiffs contacted Fleet, whose agent John Wasik ("Wasik") acknowledged the error and assured them that the erroneous information would be removed and all credit reporting agencies notified of the error. Wasik forwarded a Universal Data Form ("UDF") to the plaintiffs, indicating that a request was made to the relevant credit agencies to change the plaintiffs' account regarding the Shawmut mortgage to "paid as agreed." It is standard practice at Fleet to send UDF forms to three major credit reporting agencies: Equifax, TRW/Experian, and Trans Union. The UDF, however, contained inaccurate data regarding the dates of origin and termination of the plaintiffs' account, as well as its "source code."

In March 1997, the plaintiffs obtained an Equifax credit report and learned that Fleet had not only continued to report their "700 account" as charged-off through October 1996, but also had reported the account a second time under a different account number, No. 567001700000015362 ("567 account"). In May 1997, the plaintiffs again reported the dispute to Fleet. To correct this problem, Wasik issued two additional UDFs, one in the name of each plaintiff, to Equifax requesting a change in the plaintiffs' credit histories to read "paid

**1.** The claims against the other defendants, i.e., Fleet, Experian, Trans Union and Portfo- lio Recovery Associates have been dismissed.

as agreed." Both UDFs issued in May 1997 refer only to the plaintiffs' "700 account". Equifax, however, has no record of receiving any UDFs from Wasik.

On August 27, 1997, the plaintiffs received letters indicating that their applications for credit card accounts with BP Oil had been denied. The letters stated the "primary reason" for the denial as "derogatory information on credit file," and named Equifax as the credit reporting agency responsible for providing the plaintiffs' credit history. On October 15, 1997, the plaintiffs received an Equifax credit report, reflecting their "700 account" as "transferred or sold" and reporting their "567 account" as "charged-off." On November 4, 1997, the plaintiffs sent a letter to Equifax requesting an investigation of the Fleet account. On November 15, 1997, Equifax reported to the plaintiffs that Fleet had verified the accuracy of the two accounts. The plaintiffs attempted to use these letters from Equifax to notify Fleet of its erroneous reporting. However, Fleet never responded, as it had already sold the account to Portfolio Recovery Assets ("PRA"), a debt collection agency.

In September 1999, after receiving a letter from PRA attempting to collect an alleged outstanding balance of more than $20,000, the plaintiffs again ordered automated disclosures of their Equifax files. The credit reports contained three charge-offs: the "567 account" on Denise Richardson's report, and the "700 account" and "567 account" on Robert Richardson's report. The plaintiffs subsequently called Equifax directly to dispute these items. After completing its investigation, Equifax deleted the "567 accounts" from both files and verified, through Fleet, the remaining charge-off on Robert Richardson's file.

On April 1, 1999, the plaintiffs filed the instant action in the Massachusetts Hampshire County Superior Court, charging Equifax with violations of the FCRA and MCCRA, as well as Mass.Gen.Laws ch. 93A ("chapter 93A"), and the common law torts of defamation and intentional infliction of emotional distress. The defendant joined in a notice of removal to the federal court, and now moves for summary judgment.

## III. STANDARD OF REVIEW

The Court will grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this context, 'genuine' means that the evidence could resolve the point in favor of the nonmoving party, while 'material' means that the fact has the potential to affect the outcome of the suit under the applicable law." NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28, 32 (1st Cir.1994) (quotations, citations and emphasis omitted). The Court reviews the record "in the light most flattering to the nonmovant and indulge[s] all reasonable inferences in that party's favor." Id. (quotations and brackets omitted).

## IV. DISCUSSION

### A. Fair Credit Reporting Act

The plaintiffs claim that Equifax violated the FCRA and MCCRA by failing to follow reasonable procedures to ensure the maximum possible accuracy of information when preparing credit reports. See 15 U.S.C. § 1681e(b) ("section 1681e(b)"); Mass.Gen.Laws ch. 93, § 54(b). In addition, the plaintiffs allege that Equifax violated the FCRA and MCCRA by failing to make reasonable and timely efforts to reinvestigate the accuracy of information

that they disputed. *See* 15 U.S.C. § 1681i ("section 1681i"); Mass.Gen.Laws ch. 93, § 58(a). A negligent violation of either of these sections subjects the credit reporting agency to liability for actual damages sustained as a result of a violation, together with the costs of the action and a reasonable attorney's fee. 15 U.S.C. § 1681o; Mass.Gen.Laws § 64. A willful violation of either section subjects the agency to liability for punitive damages. 15 U.S.C. § 1681n; Mass.Gen.Laws ch. 93, § 63.[2]

### 1. Statute of Limitations

First, Equifax contends that several of the plaintiffs' claims may be barred by the statute of limitations. The FCRA provides that an action to enforce liability must be brought "within two years from the date on which the liability arises." 15 U.S.C. § 1681p. Under section 1681e(b), "liability arises when the consumer reporting agency issues an inaccurate consumer report. Under [section 1861i], liability arises when the consumer reporting agency allegedly violates its duty under the FCRA to reinvestigate." *Barron v. Trans Union Corp.*, 82 F.Supp.2d 1288, 1293 (M.D.Ala.2000) (quotations, citations and brackets omitted).

The plaintiffs' complaint was filed on April 1, 1999 in Hampshire County Superior Court. Thus, any section 1681e(b) claims arising from consumer reports which were disclosed to creditors on or before March 31, 1997, are time barred. However, none of the plaintiffs' section 1681e(b) claims are based on credit reports issued prior to that date. In addition, the defendant's duty pursuant to section 1681i did not arise until it was notified of a dispute by the plaintiffs for the first time in September or November 1997. Accordingly, the FCRA's statute of limitations does not affect the viability of plaintiffs' claims.

### 2. Section 1681e(b) Claim

Under the FCRA, a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy" regarding the information contained in a consumer's credit report. 15 U.S.C. § 1681e(b). A claim of noncompliance with section 1681e(b) "consists of four elements: (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry." *Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir. 1996). In this case, Equifax apparently does not dispute that inaccurate information was placed in reports it prepared regarding the plaintiffs' credit history. However, Equifax does challenge the plaintiffs' ability to demonstrate the remaining three elements of a section 1681e(b) claim. The Court will address each disputed element in turn.

### a. Reasonable Procedures

Equifax contends that it maintains reasonable procedures as a matter of law because it transcribed, stored, and communicated consumer information from Fleet, a source that it believed to be reliable and credible on its face. In addition, it argues that the plaintiffs cannot produce any proof that they caused Equifax to be noti-

---

**2.** In its motion for summary judgment on the plaintiffs' credit reporting act claims, Equifax observes that the FCRA and MCCRA are essentially identical, and makes its argument for dismissal of all credit reporting act claims based only upon the federal statute. Accordingly, the Court will analyze Equifax's motion under the federal law.

fied that their credit history was being erroneously reported.

Section 1681e(b) mandates that agencies follow reasonable procedures in preparing consumer reports but "does not impose strict liability for inaccurate entries in consumer reports; the preparer is held only to a duty of reasonable care. The exercise of reasonable care is determined by reference to what a reasonably prudent person would do under the circumstances." *Spence v. TRW, Inc.,* 92 F.3d 380, 383 (6th Cir.1996) (citations omitted). In evaluating whether procedures are reasonable, courts also balance "the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 50 (D.C.Cir.1984).

■ The Court declines to say that relying on creditors for accurate credit information constitutes a reasonable procedure as a matter of law where, as here, the credit reporting agency had reason to know of the dispute between the plaintiffs and Equifax. *See Bryant v. TRW,* 689 F.2d 72, 77 (6th Cir.1982) (where agency knew of dispute between consumer and creditors, confirming consumer's credit information with creditors constituted unreasonable procedure); *Barron v. Trans Union Corp.,* 82 F.Supp.2d at 1295–96. A credit reporting agency is initially entitled to rely on information contained in the reports issued by credit grantors, because it would be unduly burdensome and inefficient to require an agency to look beyond the face of every credit report. However, once notified that a consumer disputes the information contained in such records, exclusive reliance on such information is neither reasonable or justified. *See Henson v. CSC Credit Servs.,* 29 F.3d 280, 285 (7th Cir.1994) (credit reporting agency entitled to rely on court dockets to correctly recite consumer's credit history absent notice

that information is flawed); *Gill v. Kostroff,* Civ. A. 98–930–T17A, 2000 WL 141258, at *6 (M.D.Fla.2000). Thus, "[a] credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice." *Henson,* 29 F.3d at 286.

■ In this case, the exhibits and affidavits show that the plaintiffs caused notices to be sent to Equifax regarding errors in their credit history on at least three occasions before Equifax prepared their credit report for BP Oil. Despite the communication of these notices, Equifax continued to rely exclusively on Fleet's version of the plaintiffs' credit history. In the Court's view, there exists a genuine issue of material fact as to whether it was reasonable for Equifax to rely exclusively on the information provided by Fleet, given that Equifax knew or should have known that this information was unreliable or inaccurate. *See Gill,* 2000 WL 141258, at *7 (genuine issue of material fact exists as to whether defendant maintained reasonable procedures where plaintiff sent several notices to defendant, but defendant failed to correct reported errors).

Equifax contends that the plaintiffs have produced no evidence that it received the correction notices purportedly sent by Shawmut and Fleet. However, the plaintiffs have proffered letters from both Shawmut and Fleet indicating that they would inform the relevant credit reporting agencies, including Equifax, of the errors regarding the plaintiffs' Shawmut account. In addition, it was standard business practice at Fleet to send UDF notices to Equifax. Although the affidavit of Janet Mullins, Senior Manager in the Office of Consumer Affairs for Equifax, states that Equifax has no record of receiving the UDFs sent by Fleet, her statement is silent on whether Equifax

has a record of receiving the Shawmut notice. Moreover, even if Equifax had categorically denied ever receiving all three correction statements from Shawmut and Fleet, this assertion merely creates a classic dispute of material fact that is susceptible of resolution only by the finder of fact at trial.

Equifax also suggests that, even if it received the UDF correction notices, there were errors in the forms that would have made correction of the accounts impossible. For instance, the UDFs sent by Fleet contained incorrect data regarding the plaintiffs' mortgage account, such as account numbers and the dates of origin and termination. This argument, however, is unpersuasive. Indeed, the UDFs contained the plaintiffs' correct names, address, and social security account numbers. *See Thompson v. San Antonio Retail Merchs. Ass'n*, 682 F.2d 509, 513 (5th Cir.1982) (citing testimony of manager of defendant credit reporting bureau that "the social security number is the single most important information in a consumer's credit file.") In addition, the UDFs contained the name, address, and telephone number of John Wasik, the Fleet employee who sent the UDFs to Equifax, so that any discrepancies in the received data could easily have been clarified by Equifax. Certainly, if the factfinder rejected Equifax's assertion that it did not receive the UDFs from Fleet in 1996 and 1997, he or she could reasonably infer that Equifax maintained unreasonable procedures because it failed to reconcile the inconsistent data contained in the UDFs.

b. Damages

██ Equifax also challenges the sufficiency of the plaintiffs' evidence regarding damages on the ground that damages under the FCRA "cannot be recovered without a showing of actual loss." Defendant's Motion for Summary Judgment at 10. To the contrary, courts have consistently held that "actual damages may include humiliation and mental distress, even in the absence of out-of-pocket expenses." *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir.1995), *cert. denied*, 517 U.S. 1150, 116 S.Ct. 1452, 134 L.Ed.2d 571 (1996); *see Cousin v. Trans Union Corp.*, 246 F.3d 359, 369 n. 15 (5th Cir.2001) (emotional distress damages compensable under FCRA); *Philbin*, 101 F.3d at 962 & n. 3 (same); *Guimond*, 45 F.3d at 1333 (same). Here, the plaintiffs allege that they have suffered emotional distress upon learning that Equifax has reported incorrect credit information to prospective creditors, and resulting from the denial of credit by BP Oil, as well as their lengthy effort to correct their credit reports. *See, e.g., Stevenson v. TRW, Inc.*, 987 F.2d 288, 296–97 (5th Cir.1993) (affirming award of damages for pain and suffering where consumer experienced humiliation resulting from three credit and lengthy dealings with credit reporting agency). Thus, the Court cannot say that the plaintiffs fail to state a genuine issue of material fact on the question of damages.

c. Causation

██ Furthermore, Equifax contends that the plaintiffs set forth insufficient proof that the plaintiffs' damages were caused by the inaccurate information in the Equifax credit report. To establish a prima facie case pursuant to section 1681e(b), the plaintiff must "produce evidence from which a reasonable trier of fact could infer that the inaccurate entry was a 'substantial factor' that brought about the denial of credit." *Philbin*, 101 F.3d at 968. Here, the plaintiffs submit two letters from BP Oil dated August 27, 1997, rejecting their applications for credit, and citing to an Equifax credit report as the "primary reason" for the denial of credit. In

addition, the parties agree that the Equifax credit reports obtained by the plaintiffs in March 1997 and in October 1997 contained inaccurate, negative information. Therefore, the Court concludes that a reasonable jury could infer that inaccurate, negative information contained in the Equifax credit reports constituted a substantial factor in BP Oil's decision to decline the plaintiffs' credit applications.

Equifax's citation to *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir.1991), moreover, is unavailing. There, the court granted summary judgment to the defendant in an FCRA dispute on the issue of causation after all of the credit reporting agency's records were reviewed and there emerged no evidence that any credit report produced by the defendant had ever been used in making an adverse credit decision against the plaintiff. *Cahlin*, 936 F.2d at 1156, 1161. Here, by contrast, the plaintiffs have produced the credit denials issued by BP Oil that specifically reference Equifax credit reports. While the plaintiffs' case "might have been stronger had [they] deposed or taken affidavits of those responsible for the decision, such evidence is not essential to make out a prima facie case pursuant to [section 1681e(b) ]." *Philbin*, 101 F.3d at 968.

### 3. Section 1681i

■ Section 1681i(a)(1)(A) of the FCRA provides, in pertinent part, that where a consumer notifies a credit reporting agency that information contained in his or her report may be inaccurate, "the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file...." Equifax argues that the statute requires a credit reporting agency only to confirm the accuracy of the information with the original source of information, but imposes no mandate on the agency to take additional steps to confirm the accuracy of the disputed information. However, the majority of courts hold that section 1681i(a) requires a credit reporting agency, in certain circumstances, to verify the accuracy of its initial source of information. *See, e.g., Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir.1997); *Henson*, 29 F.3d at 286–87; *Stevenson*, 987 F.2d at 293. "Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable." *Henson*, 29 F.3d at 286. Moreover, the courts have determined in this context that "[w]hether a reasonable investigation has been conducted is generally a question for the jury." *Bruce v. First U.S.A. Bank, Nat'l Ass'n*, 103 F.Supp.2d 1135, 1143 (E.D.Mo.2000).

■ Viewing the record in the light most favorable to the plaintiffs, the Court concludes that the plaintiffs' section 1681i claim survives Equifax's motion for summary judgment. The plaintiffs submit copies of four separate written communications to Equifax in which they dispute the accuracy of their credit history. In addition, one of these letters includes a copy of the discharged Shawmut mortgage. Despite the plaintiffs' repeated complaints, Equifax continued to rely solely upon the information provided by Fleet when it investigated the plaintiffs' complaints in November 1997 and September 1999. Thus, genuine issues of material fact exist as to whether Equifax fulfilled its duty to reinvestigate pursuant to section 1681i. *See Cushman*, 115 F.3d at 226 (denying defendant's motion for summary judgment in claim for failure to reinvestigate where it merely verified negative information with

credit grantors despite consumer's warning that information was inaccurate); *Stevenson*, 987 F.2d at 293 (same); *cf. Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir.1986) (denying defendant's motion for new trial for failure to reinvestigate where consumer informed reporting agency of his personal dispute with credit grantor, yet reporting agency relied solely on credit grantor for information during investigation), *cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987) and *cert. denied sub nom. Credit Bureau Services–New Orleans v. Pinner*, 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780 (1987). "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." *Stevenson*, 987 F.2d at 293.

### 4. Punitive Damages for Willful Violations

Next, Equifax moves for summary judgment with regard to the plaintiffs' claim under section 1681n, which provides for civil liability for willful noncompliance with the FCRA. "To be found in willful noncompliance, a defendant must have knowingly committed an act in conscious disregard for the rights of others." *Stevenson*, 987 F.2d at 293 (quotation omitted). "Generally, courts have allowed a willful noncompliance claim to proceed where a defendant's conduct involves willful misrepresentations or concealments. In those cases, a consumer reporting agency has typically misrepresented or concealed some or all of a credit report from a consumer." *Cousin*, 246 F.3d at 372 (citation omitted). In addition, the Third Circuit held that a plaintiff may present a section 1681n claim to the jury if she can show that a credit reporting agency adopted a reinvestigation policy with knowledge that the policy violates consumer rights under the FCRA, or with reckless disregard to whether its policy violated those rights. *Cushman*, 115 F.3d at 227.

█ In the Court's view, the plaintiffs fail to show sufficient evidence of willful noncompliance with the FCRA to survive this motion for summary judgment. There is no evidence to support a claim that Equifax willfully misrepresented or concealed any part of a credit report from the plaintiffs. Moreover, the plaintiffs do not allege that Equifax adopted its reinvestigation policies with knowledge, or reckless disregard, as to whether they contravened rights of consumers under the FCRA. Finally, the plaintiffs' contention that Equifax failed to correct an error in their credit reports after receiving several notices does not constitute evidence of a willful violation. *See Philbin*, 101 F.3d at 970. In the absence of any evidence that Equifax acted to intentionally harm the plaintiffs, summary judgment must be granted as to this claim.

### B. Chapter 93A

█ Equifax also contends that summary judgment must be granted as to the plaintiffs' claim pursuant to Mass.Gen. Laws ch. 93A ("chapter 93A"). The Court agrees. "Where injury is incurred because of conduct which comprises the elements of any ... statutory ... cause of action, and which is also a violation of the Consumer Protection Act, recovery of cumulative damages under multiple counts may not be allowed." *Calimlim v. Foreign Car Center, Inc.*, 392 Mass. 228, 467 N.E.2d 443, 448 (1984). In other words, "where the same acts cause the same injury under more than one theory ... duplicative damage recovery will not be permitted." *Id.* Here, the plaintiffs' Chapter 93A claim is premised solely upon conduct by Equifax that also forms the basis for the plaintiffs' FCRA claims. Complaint at

¶¶ 183–84. Accordingly, summary judgment is granted as to the plaintiffs' Chapter 93A claim.

### C.  Defamation

■ The FCRA preempts certain state law privacy causes of action, such as defamation. Pursuant to 15 U.S.C. § 1681h(e) ("section 1681h(e)"), "[e]xcept as provided in sections [1681n and 1681o], no consumer may bring any action or proceeding in the nature of defamation ... except as to false information furnished with malice or willful intent to injure such consumer." Section 1681h(e) has been interpreted "to provide qualified immunity to consumer reporting agencies except as to false information furnished with malice or willful intent to injure." *Wiggins v. Equifax Servs., Inc.*, 848 F.Supp. 213, 223 (D.D.C. 1993).

> A statement is made with malice if the speaker made the statement with knowledge that it was false or with reckless disregard of whether it was false or not. Reckless disregard requires evidence that the speaker entertained actual doubt about the truth of the statement.

*Bruce*, 103 F.Supp.2d at 1145 (quotations and citations omitted). Here, the plaintiffs fail to adduce any evidence showing that Equifax knew the plaintiffs' credit history it furnished was false or that it entertained actual doubt regarding the veracity of such information. Thus, the plaintiffs' defamation claim is preempted by the FCRA.

### D.  Intentional Infliction of Emotional Distress

■ Finally, Equifax moves for summary judgment on the plaintiffs' claim of intentional infliction of emotional distress. To prevail on a such a claim, the plaintiffs must establish: (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff's distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Tetrault v. Mahoney, Hawkes & Goldings*, 425 Mass. 456, 681 N.E.2d 1189, 1197 (1997). There is no evidence in this case that Equifax acted with the intention to inflict emotional distress. *See id.* (claim will fail even if defendant's conduct is characterized by "malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.") In addition, there is no evidence that Equifax's conduct was extreme and outrageous. *See id.* (claim cannot be "predicated on mere insults, threats, annoyances, petty oppressions or other trivialities"). Accordingly, the Court grants Equifax's motion to dismiss the plaintiffs' claim of intentional infliction of emotional distress.

### V.  CONCLUSION

Accordingly, Equifax's motion for summary judgment is GRANTED with regard to the plaintiffs' claims for: (1) willful violations of the FCRA and MCCRA; (2) violation of Chapter 93A (Count XIV); (3) defamation (Count XV); and (4) intentional infliction of emotional distress (Count XVI). However, Equifax's motion is DENIED with regard to the plaintiffs' claims that Equifax breached its duties to maintain reasonable procedures and to reinvestigate under the FCRA (Count XIII) and MCCRA (Count XII).

It is So Ordered.