**John Victor GRAZIANO, Jr., Plaintiff,**

v.

**TRW, INC., Trans Union Corporation and East Cambridge Savings Bank, Defendants.**

**Civ. A. No. 94–10265–RCL.**

United States District Court, D. Massachusetts.

Feb. 17, 1995.

John Victor Graziano, Jr., pro se.

Kristen T. Wigandt, Stoneham, MA, for John Victor Graziano, Jr.

Michael J. Murphy, Frisoli & Associates, Cambridge, MA, for TRW, Inc., East Cambridge Savings Bank.

Catherine E. Reuben, Robinson & Cole, Boston, MA, for Trans Union Corp.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

What's in a name? That question, rhetorically posed by Shakespeare's Juliet,[1] is at the heart of the present case. The defendant, East Cambridge Savings Bank ("the Bank"), obtained consumer reports on the plaintiff from two consumer reporting agencies, TRW, Inc. ("TRW") and Trans Union Corporation ("Trans Union"), after an individual with a name similar to that of the plaintiff obtained a loan from the Bank, using the plaintiff's social security number in the process.[2] The plaintiff claims that the Bank obtained these consumer reports under false

---

1. William Shakespeare, *Romeo and Juliet,* act II, scene ii.

2. TRW and Trans Union were originally named as defendants in this action. The complaint as to each of them, however, has been voluntarily dismissed by the plaintiff. The case thus proceeds against the Bank only.

pretenses, for an impermissible purpose, and in violation of the plaintiff's right of privacy—all in violation of the Fair Credit Reporting Act. He also asserts a negligence claim grounded on the Bank's alleged failure to ascertain the true identity of the person to whom it made the loan. The Bank has moved for summary judgment on the ground that none of its conduct violated FCRA. The Bank has also moved to dismiss the state-law negligence claim on the ground that dismissal of the claims under FCRA should encourage the court to decline supplemental jurisdiction over the negligence claims.[3]

The Court grants the Bank's motion for summary judgment.

### 1. *Facts.*

Summary judgment is called for when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Following are the facts of this case, summarized, as required under Rule 56(c), in a light most favorable to the plaintiff, with all inferences drawn in his favor. *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir.1994), *citing LeBlanc v. Great Am. Ins. Co.,* 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

On October 19, 1987, *John Venesio Graciano, Jr.* completed a credit application by which he sought to borrow $6,300 from the Bank to purchase an automobile. Graciano listed his Social Security number as 018–44–7399 and indicated that he worked for New England Tea & Coffee in Malden, Massachusetts. On October 21, 1987, the Bank verified Graciano's employment at New England Tea and Coffee, and his application was approved.

Unbeknownst to the Bank, Graciano was using someone else's social security num-

ber—and that someone else had a very similar name—*John Victor Graziano, Jr.,* the plaintiff here. The plaintiff and Graciano had different addresses, different places of employment and different dates of birth. And, of course, the plaintiff and Graciano had different, albeit similar, names. The Bank failed to ascertain the true identity and social security number of its loan applicant, Graciano.

On October 30, 1987, Graciano signed a promissory note for $4,500, and was given a bank draft in that amount, payable to him and the dealer from whom he was purchasing the automobile.[4] Graciano failed to make any payments on the note. On June 30, 1988, the matter was referred to the Bank's attorney for collection. The attorney sought and recovered for the Bank, on February 14, 1989, a judgment against Graciano in the amount of $6,315.64.

The Bank requested consumer reports on Graciano on at least three occasions: July 18, 1988, February 11, 1992, and November 25, 1992. Each request was made for the purpose of obtaining information as to the whereabouts of Graciano in order to assist the Bank in its efforts to collect its judgment.

The Bank requested the first report on Graciano by entering into the computer system the social security number he had falsely provided to the bank, i.e., the plaintiff's social security number. The Bank received two reports, one for Graciano and one for the plaintiff. The Bank requested the second and third reports after it already knew or should have known that there were two individuals with similar names using the same social security number.

The plaintiff claims that he has never requested any credit or taken a loan from the Bank. Nor, he asserts, has he ever been a customer of the Bank.

On December 10, 1992, the plaintiff received a letter from an attorney for the

---

**3.** The Bank originally moved to dismiss the complaint as to the counts against it. At the hearing on the motion to dismiss, the Bank was permitted to convert its motion to one for summary judgment. After the hearing, the parties submitted further material on the motion for summary

judgment and in response to questions posed by the Court.

**4.** There is no explanation in the record as to why the actual loan amount was less than the amount in the application.

Bank, advising him that he owed the Bank $8,589.27 and asking the plaintiff to contact him in order to work out an agreeable payment plan. The letter was addressed to the plaintiff's correct address, but the name on the letter was "John V. Graciano."

Before being contacted by the Bank's attorney, the plaintiff had been aware that someone had been misusing his social security number for employment purposes. Indeed, on March 12, 1991, the plaintiff had advised the Social Security Administration that his number was being misused. Eventually the plaintiff received a new social security number.

### 2. Discussion.

■ In the complaint, the plaintiff claims that the Bank willfully obtained the plaintiff's consumer report under false pretenses. Section 1681q of FCRA provides:

Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined not more than

$5,000 or imprisoned not more than one year, or both.

FCRA creates a private right of action for violations of its provisions. Section 1681n provides that there is a private right of action against a "user of information which willfully fails to comply with any requirement imposed under this subchapter...." [5]

■ The plaintiff correctly states that, under FCRA, "[t]o constitute willful noncompliance, a party must have 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" Plaintiff's Opposition at 13, *quoting Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir.1986), *cert. denied*, 483 U.S. 1022, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987). *See also Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir.1993). The plaintiff argues that, after receiving the first report on Graziano, the Bank was on notice that more than one person was using the same social security number, and that therefore the Bank willfully obtained the second and third report under false pretenses.[6]

**5.** Section 1681*o* provides that there is a private right of action against a "user of information which is negligent in failing to comply with any requirement imposed under this subchapter...." The plaintiff argues that the Bank may be held liable for negligent behavior under section 1681q. He did not specifically allege, in his FCRA counts against the Bank, that the Bank acted negligently, but because he argued the point in his brief, the Court will address it here.

Several courts have concluded that one cannot negligently violate section 1681q. *See Kennedy v. Border City Savings & Loan Association*, 747 F.2d 367, 368 n. 1 (6th Cir.1984) ("Since violation of Section 1681q occurs only when an individual acts knowingly and willfully, Section 1681n rather than Section 1681*o* is the proper vehicle for civil liability for violations of 1681q"); *Ippolito v. WNS, Inc.*, 864 F.2d 440, 448 n. 8 (7th Cir.1988), *cert. dismissed*, 490 U.S. 1061, 109 S.Ct. 1975, 104 L.Ed.2d 623 (1989) ("[W]e have serious doubts as to whether merely negligently requesting a consumer report violates the FCRA"); *Allen v. Calvo*, 1992 WL 391302 (D.Ore.1992) ("Negligent conduct does not give rise to liability under section 1681q"); *Rice v. Montgomery Ward and Co, Inc.*, 450 F.Supp. 668, 671 (M.D.N.C. 1978) ("The Court notes that since § 1681q requires the information to have been knowingly and willfully obtained under false pretenses, a person may be held civilly liable pursuant only to § 1681n which covers willful failure to comply with the FCRA and not under § 1681*o* which

pertains to negligent noncompliance with the FCRA").

Other courts have suggested that there may be liability under section 1681*o* for a violation of section 1681q. *See Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir.1978); *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 971–72 (4th Cir.1987); *Zeller v. Samia*, 758 F.Supp. 775, 778 (D.Mass.1991). These courts do not explain what appears to be a logical impossibility: how one can negligently violate a provision requiring willful conduct. This Court thus cannot agree with the conclusions of this latter group.

**6.** As to the first report, the plaintiff argues that the Bank was so negligent as to have been willful. The plaintiff states that it was incumbent upon the Bank to have certain safeguards in place to assure that the Bank transacted business with the proper person prior to approving the loan application. Incongruously, the plaintiff argues that the Bank should have performed a credit check on Graciano by requesting his consumer report. Had the Bank done so, however, it likely would have received the plaintiff's consumer report as well. That is, after all, what happened when the Bank did request consumer reports in connection with its collection efforts. The plaintiff seems to be suggesting that it would not have been a violation of FCRA for the Bank to obtain the plaintiff's consumer report *before* the loan was made, but that it was a violation to

The plaintiff's argument falters on the definition of "false pretenses." It has generally been held that a court determines whether a request for a consumer report has been made under "false pretenses" by looking at the permissible purposes for which consumer reports may be obtained under § 1681b of FCRA. *See Zamora v. Valley Fed. Sav. & Loan Ass'n.*, 811 F.2d 1368, 1370 (10th Cir.1987); *Zeller*, 758 F.Supp. at 781. One court, while relying on the accepted view that a request which is not made for a "permissible purpose" is made under false pretenses, added the following: "Hence, a user who purports to seek a consumer report for a permissible purpose, *while secretly seeking the report for an impermissible purpose,* is subject to liability under the FCRA for obtaining information under false pretenses." *Allen v. Calvo*, 832 F.Supp. 301, 303 (D.Ore. 1993) (emphasis added). *Black's Law Dictionary* defines "false pretense" as a "representation of some fact or circumstance which is not true and is calculated to mislead." *Webster's Collegiate Dictionary* includes the following relevant definition of "pretense:" "professed rather than real intention or purpose." The Court concludes that "false pretenses" under § 1681q requires not merely a purpose which is not technically in compliance with the purposes set forth in § 1681b, but a calculated attempt to mislead another in order to obtain information.

The Bank cannot be said to have used false pretenses to obtain the information about the plaintiff. Even if the Bank were on notice that there were two people using the same social security number, there is nothing in the record to suggest that the Bank's true purpose was anything other than to collect on Graciano's note.[7] Even if, by pursuing information on Graciano, it knew that it would receive information on Graziano, the Bank did not intend to mislead the consumer reporting agencies when it made

its request. It follows then that the Bank did not violate section 1681q of FCRA.

It is understandable that the plaintiff feels aggrieved at a scofflaw's misuse of his name and social security. Unfortunately, FCRA does not provide him with an avenue for relief against the Bank.

The Court allows the Bank's motion for summary judgment as to Counts 9 and 10 of the plaintiff's complaint. The Court declines to exercise supplemental jurisdiction over Count 11, which asserts a state-law claim of negligence. Counts 9, 10 and 11 are all thus dismissed and judgment shall enter for the Bank as to each of these counts.

So ordered.

---

obtain the consumer report *after* the loan was made.

The plaintiff cannot have it both ways. Either obtaining the plaintiff's consumer report by utilizing his social security number in ignorance of his true identity is a violation of FCRA or it is not. At any rate, there is nothing in FCRA which requires a Bank to perform the type of pre-loan

investigation suggested by the plaintiff here, much less any indication that the failure of the Bank to conduct such an investigation in this case constituted willful misconduct.

7. Section 1681b permits a consumer reporting agency to provide information for purposes of "collection of an account of [a] consumer."