Robert VENO, Plaintiff,

v.

AT&T CORPORATION, Defendant.

No. CIV.A.02–10383–NG.

United States District Court,
D. Massachusetts.

Dec. 24, 2003.

James A.G. Hamilton, John R. Mayer, Perkins, Smith & Cohen, LLP, Boston, MA, for AT&T Corporation, Defendant.

John J. Roddy, Grant & Roddy, Boston, MA, for Robert H. Veno, Plaintiff.

## MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

GERTNER, District Judge.

This case is brought by Robert H. Veno ("Veno") against AT&T Corporation ("AT&T") for repeatedly obtaining Veno's credit report in violation of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), Massachusetts' Credit Reporting Act, G.L. c. 214 § 1B ("MCRA"), and Massachusetts General Laws chapter 93A. Veno was not a customer of AT&T at the time of any of the alleged incidents.

Before the Court presently are cross-motions for Summary Judgment. For the reasons set forth below, defendant's mo-tion for summary judgment [document # 16] is **GRANTED** in part and **DENIED** in part. Plaintiff's Count II is also **DIS-MISSED** on the Court's own motion. Plaintiff's cross-motion for summary judgment [document # 20] is **DENIED** at this time.[1]

## I. FACTS

Plaintiff Veno is not now and has never been an AT&T customer. His father, Robert H. Veno, Sr., resides at the same address as plaintiff, and was an AT&T customer during the relevant time period. Veno contends—and AT&T does not present any evidence to contest—that five times between June 1996 and August 2000, AT&T obtained plaintiff's credit report.[2]

---

1. The Court notes that plaintiff may refile this motion if he chooses to file an amended complaint.

2. In its response to Veno's statement of material facts [document # 30], filed in opposition to Veno's cross-motion for summary judgment [document # 20], AT&T for the first time explicitly denies ever having accessed Veno's account, intentionally or unintentionally. Defendant makes this blanket statement without presenting any evidence—without citing to a single affidavit, deposition testimony, or anything else.

Defendant does this despite the fact that Veno has presented print-outs from various credit reporting agencies which on their face indicate that AT&T did exactly what he claims it did, and despite the fact that AT&T is clearly in a superior position to Veno in terms of its ability to secure evidence concerning the communications between AT&T and the credit reporting agencies. In addition, Veno has presented a letter from Joseph Priddy ("Priddy"), a senior attorney at AT&T, admitting to Veno's lawyer that defendant had accessed Veno's account on at least two occasions, and explaining that it was an accident [document # 25, exhibit M]. (Priddy expressed a more ambivalent position in a letter to Veno's attorney two months later [document # 25, exhibit V.]) In the one piece of deposition testimony AT&T has presented from one of its employees, district manager Gary Craig ("Craig") [document # 17, exhibit 5], Craig agreed that the print-outs Veno presents indicate that AT&T requested and should have received Veno's credit report. Craig did not deny that AT&T did so, saying only that he did not have first-hand knowledge that the requested report was received.

In the absence of any contrary evidence, Veno is entitled to the fair inference which is apparent from the face of the business records he presents. AT&T must do more to place facts in dispute than suggest an alternative theory in its response to a statement of material facts. Veno's allegation that AT&T accessed his credit report will thus be considered not in dispute for the purpose of the summary judgment motions currently before this Court.

In addition, AT&T's conduct in this litigation—choosing, until now, not to litigate or investigate Veno's claims that they accessed his credit report five times in violation of the FCRA—has demonstrated extreme arrogance. While AT&T's filings to this point have never challenged Veno's allegation that the account accessing occurred, it appears to believe it can avoid summary judgment simply by submitting a statement of material facts denying the relevant acts. In effect, Veno is saying, "You accessed my account and here's the proof." AT&T responds with, "No, we did not," and nothing else. AT&T's tactics in this litigation, even aside from the allegedly impermissible accessing of Veno's report, cer-

Both parties agree that because plaintiff was not an AT&T customer during any of that time period, AT&T did not have the right to obtain his credit report.

According to AT&T, this is a simple case of an understandable mistake resulting in a nuisance suit. Defendant claims, and plaintiff does not disagree, that it was attempting to obtain plaintiff's father's ("Veno Sr.") credit report. Plaintiff claims AT&T obtained plaintiff's report accidentally because Veno and Veno Sr. have essentially the same name and the same address. AT&T contends that it only accessed Veno Sr.'s report, and the credit reporting agencies simply recorded the access on the wrong account. As stated above, however, defendant offers literally no evidentiary support for this theory. Defendant also claims Veno suffered virtually no injury as a result of the mistake.

Although plaintiff does not present evidence that the problem began as anything more than a mistake based on AT&T's confusing Veno with his father, he alleges it quickly turned into a situation where his legally valid complaints to the company were ignored by defendant. According to Veno, when AT&T first accessed his credit report in June 1996 [3] (through Equifax, Inc. ("Equifax"), a national credit reporting agency), he made numerous calls to defendant informing AT&T that it had no right to pull his report, and requesting that it not do so again. He spoke to numerous AT&T customer service representatives, but was offered no explanation. He was eventually told by Russell Ganner of AT&T's "Chairman's Executive Staff" that notwithstanding Equifax's records,

AT&T had no record that it had even made the account review inquiry.

Despite this, on February 10, 1998, AT&T again accessed (through Experian Information Solutions, Inc. ("Experian")) Veno's credit report. Veno again called AT&T to complain and request an explanation or apology, but was provided neither. Instead, AT&T wrote to plaintiff on November 12, 1998, and asserted it had complied with the FCRA "regarding the AT&T inquiry made on your credit bureau report." Plaintiff responded with a letter to AT&T on November 27, 1998, again notifying AT&T that it was violating his rights, and requesting a specific written response and acknowledgment that the practice would cease. AT&T did not respond.

After AT&T ignored (or at least appeared to) Veno's November 27, 1998, letter, plaintiff's lawyer, Elizabeth Miller ("Miller"), wrote a letter to AT&T on June 14, 1999, pursuant to M.G.L. c. 93A, concerning the two accesses of Veno's report which had occurred prior to that point. On September 2, 1999, AT&T responded, and for the first time conceded the access. It explained that in both cases AT&T intended to access the report of Veno's father, but because AT&T did not have Veno Sr.'s social security number, Equifax and Experian provided Veno's report.

In November 1999, Veno learned that AT&T had accessed his credit report a third time (in February 1999), through Trans Union, LLC, another national credit reporting agency. Miller wrote AT&T a follow-up letter regarding this third access, but received no response. This third im-

tainly raise issues concerning liability under M.G.L. c. 93A.

**3.** At approximately the same time, Veno was a victim of identity theft. The individual who used Veno's identity opened at least eight fraudulent accounts and ran up unlawful

charges on those accounts. Veno did not pay any of the charges, and his name was ultimately cleared with each of his creditors. Veno also settled a number of lawsuits he brought arising out of that identity theft.

permissible access can in some respects be grouped with the first two, however, as they both occurred prior to AT&T's receipt of Miller's first letter and defendant's acknowledgment of the problem (although still after Veno's November 27, 1998, letter, and his numerous phone calls). The same cannot be said of the fourth and fifth incidents.

By August 1999, Veno had placed countless phone calls complaining about the access, and between himself and his attorney had sent three letters to AT&T. Despite these efforts, AT&T's response to these efforts might best be summarized by "Ernestine", the telephone operator portrayed by Lily Tomlin on "Saturday Night Live": "We don't care. We don't have to. We're the phone company." On August 5, 1999, AT&T accessed Veno's report for a fourth time[4], again via Equifax. This access— which occurred more than a month after Miller's first letter and less than a month before AT&T's mistake-admitting letter— was unknown to Veno until after Miller sent her second letter.

The fifth—and from our perspective most important[5]—access took place in September 2000, again via Equifax under the designation "base score project." This impermissible access clearly came well after the multiple letters from Veno and Miller, and the mistake-admitting letter from AT&T.

On June 20, 2001, Miller, acting on behalf of Veno, sent AT&T a demand for relief pursuant to M.G.L. c. 93A, offering to settle the matter without litigation. AT&T responded by claiming that its investigation *produced no indication that it had made any of the five inquiries* described above, despite the fact that AT&T had previously admitted in the September 1999 letter that it had made the 1996 and 1998 inquiries. Miller wrote follow-up letters in August and September 2001, enclosing redacted copies of the actual credit reports disclosing the last three inquiries (August 1999, November 1999, and September 2000). On October 30, 2001, AT&T formally responded to the M.G.L. c. 93A letter by refusing to offer any amount in settlement.

Veno filed this action in March 2002, alleging that AT&T: violated the FCRA by obtaining his report through the use of false pretenses (Count I), knowingly obtaining his report without a permissible purpose (Count II), and willfully obtaining a consumer report without a permissible purpose (Count III); violated the MCRA and Massachusetts General Law Chapter 214B, § 1B, invasion of financial privacy (Count IV); and violated Massachusetts General Law Chapter 93A (Count V). Counts I–III potentially allow punitive damages.

## II. *LEGAL ANALYSIS*

■ The FCRA imposes civil liability on "any consumer reporting agency or user" which is either negligent, 15 U.S.C. § 1681o, or willful, 15 U.S.C. § 1681n, in failing to comply with any requirement imposed under the FCRA. Veno alleges that AT&T violated 15 U.S.C. § 1681b(f), which provides an extensive list of the limited circumstances under which a user of credit reports may utilize a consumer report. It is undisputed that AT&T accessed Veno's credit report, and that under 15 U.S.C. § 1681b it must have a valid purpose, as listed in the statute.

---

4. The report was accessed this time by an undisclosed entity under the stated purpose of "base score project." Veno alleges, however, that the entity was AT&T, and defendant does not deny that allegation.

5. This is the only access which falls within the two-year statute of limitations under § 1681p, as Veno filed his complaint on March 6, 2002.

AT&T asserts in its motion for summary judgment .that it did not obtain Veno's consumer report knowingly, willfully, or under false pretenses, and thus all counts of the Complaint should be dismissed. Alternatively, AT&T argues that Veno lacks sufficient evidence of actual damages or an evidentiary basis for punitive damages to create a genuine issue of material fact. Any judgment should therefore be limited to statutory damages and reasonable attorneys' fees. In his cross-motion for summary judgment, Veno argues that AT&T's conduct was at minimum negligent, and that he .is entitled to summary judgment on his Massachusetts state law claims and some of his FCRA claims. Indeed, Veno asserts that the only true question of law before the Court is whether AT&T's conduct was merely negligent, or whether it was willful as a matter of law.

Under Federal Rule of Civil Procedure 56, summary judgment appropriately disposes of a claim when the pleadings, depositions, interrogatory responses, admissions and affidavits on file suggest that there is no genuine issue of material fact and the movant is entitled to judgment on the claim as a matter of law. Fed.R.Civ.P. 56(c). It is incumbent upon a court confronted with a summary judgment motion to view the facts in the light most favorable to the nonmovant, and all reasonable inferences from these facts are to be drawn in its favor. *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 42 (1st Cir.1999); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## A. *AT& T's Motion for Summary Judgment*

### ·1. *Defendant's Conduct Under the FCRA*

AT&T's motion for summary judgment [document # 16] argues that as a matter of law AT&T did not obtain Veno's consumer report knowingly, willfully, or under false pretenses. ·

### a. *Willful Violation*

Plaintiff makes serious allegations in this case, many of which are supported by the undisputed facts. Veno represents, and AT&T does not present evidence to dispute, that defendant obtained Veno's credit report five times over a period of 50 months. At no point during that time did AT&T have a relationship with Veno that would have allowed them to access his report under the specific guidelines set out in the FCRA. AT&T apparently did this despite tireless efforts by Veno, his mother, and his lawyer, both by· phone and by letter, to inform defendant of the violations, and get them to cease.

The viability of Count III hinges on whether AT&T *willfully* obtained Veno's report without a permissible purpose. Under the FCRA, "[t]o constitute willful noncompliance, a party must have 'knowingly and intentionally committed an act in conscious disregard for the rights of others.'" *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir.1993); *Richardson v. Fleet Bank*, 190 F.Supp.2d 81, 89 (D.Mass.2001). *See also Graziano*, 877 F.Supp. at 56. Actions showing a "reckless indifference" to plaintiff's rights under the FCRA can also constitute willfulness. *Barron v. Trans Union Corp.*, 82 F.Supp.2d 1288, 1298 (M.D.Ala.2000) (denying summary judgment for defendant where plaintiff alleged willful violation of FCRA for failure to have adequate procedures and adequately investigate consumer's complaints regarding inaccurate information). A plaintiff need not show malice or evil motive to prove willfulness, *Id.*, and is not required to show that the defendant

engaged in misrepresentations or attempted to mislead another. *See Nitti v. Credit Bureau of Rochester, Inc.,* 375 N.Y.S.2d 817, 84 Misc.2d 277 (N.Y.Sup.1975). The facts alleged by Veno, most of which are undisputed, may satisfy this "willfulness" standard depending on what inferences are made.

In fact, the only question is where AT&T's conduct fits on a continuum from negligence in failing to respond to Veno's complaints, to willfully ignoring them. There is at the very least a triable issue on whether AT&T's conduct meets the "willful" standard required under FCRA, 15 U.S.C. § 1681n.

**b. *Use of False Pretenses***

▇▇▇ Count I of plaintiff's complaint alleges a violation of 15 U.S.C. § 1681q for obtaining a consumer report by use of false pretenses. A court is to determine whether a request for a consumer report has been made under "false pretenses" by looking at the permissible purposes for which consumer reports may be obtained under 15 U.S.C. § 1681b of the FCRA. *See Graziano v. TRW, Inc.,* 877 F.Supp. 53, 57 (D.Mass.1995) (citing *Zamora v. Valley Fed. Sav. & Loan Ass'n.,* 811 F.2d 1368, 1370 (10th Cir.1987); *Allen v. Calvo,* 832 F.Supp. 301, 303 (D.Or.1993)) ("Hence, a user who purports to seek a consumer report for a permissible purpose, while secretly seeking the report for an impermissible purpose, is subject to liability under the FCRA for obtaining information under false pretenses.") In *Graziano,* the Court concluded "that 'false pretenses' under 15 U.S.C. § 1681q requires not merely a purpose which is not technically in compliance with the purposes set forth in 15 U.S.C. § 1681b, but a calculated attempt to mislead another in order to obtain information." *Graziano,* 877 F.Supp. at 57.

In *Graziano,* the plaintiff similarly alleged name confusion and that the defendant had obtained his report when it intended to obtain someone else's.[6] Although it was undisputed that the bank had made the error, and that it did not have the right to obtain Graziano's report, the Court held that a false pretenses cause of action under § 1681q did not apply because it was not a case of the bank having a secret impermissible purpose or intentionally misleading the consumer reporting agencies. *Id.*

Veno has not presented even the hint of any evidence that AT&T's true purpose was anything other than to obtain a credit report for Veno Sr. While the extent to which they knew, should have known, or did not care that they were wrongfully obtaining Veno's report might create liability under other sections of the FCRA, the facts here clearly do not describe a violation of 15 U.S.C. § 1681q.

**c. *Knowing Violation***

In addition, Veno's Count II alleges that AT&T "knowingly" obtained his report without a permissible purpose, thus triggering 15 U.S.C. § 1681n, while Count III alleges that AT&T "willfully" obtained his report without a permissible purpose. Either Veno's claims are redundant, or he is misinterpreting the statute. Only conduct which is willful is covered under 15 U.S.C. § 1681n. If Veno is using "knowingly" to mean, "knowingly and intentionally committed an act in conscious disregard" of Veno's rights, then the second count is unnecessary, because such conduct is will-

---

**6.** While the mistakes in *Graziano* and this case had similar causes, the cases are otherwise quite different. The allegation that AT&T's inquiries continued after numerous complaints from Veno (a factual situation absent from *Graziano*) significantly separates the two cases as far as analysis of other sections of the FCRA.

ful. *See Stevenson,* 987 F.2d at 293 (quoting *Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986)). If Veno is using "knowingly" to mean something less, he is describing a standard which would encompass conduct which is not covered by 15 U.S.C. § 1681n. Either way, Count II is **DISMISSED** from the complaint.

### 2. *Plaintiff's Allegations of Actual Damages*

■ AT&T also argues that summary judgment should be granted as to plaintiff's claim for actual damages because he does not allege that he suffered actual damages as a result of AT&T's accessing of his credit report.

■ Under § 1681, humiliation, embarrassment, and mental distress can constitute actual damages. *Casella v. Equifax Credit Information Serv.,* 56 F.3d 469, 474 (2d Cir.1995); *Guimond v. Trans Union Credit Information Co.,* 45 F.3d 1329, 1333 (9th Cir.1995). AT&T disagrees in this case, citing to *Casella,* where the court stated that a plaintiff must present evidence a creditor or third-party learned of derogatory information to recover for emotional damages, humiliation or anxiety. *Casella,* 56 F.3d at 475. *Compare Stevenson,* 987 F.2d at 297 (allowing emotional distress damages where the plaintiff was denied credit three times and experienced considerable embarrassment from having to discuss his problems with business associates and creditors.)

Significantly, the cases defendant cites were not suits alleging violation of the disclosure provision of the FCRA. As plaintiff correctly points out, in such suits, like this one, the Act's purpose of protecting consumer confidentiality is implicated. *See Myers v. Bennett Law Offices,* 238 F.3d 1068, 1074 (9th Cir.2001). Such cases are akin to invasion of privacy cases under state-law—the plaintiffs allege that the defendants invaded their privacy by obtaining information they had no right to obtain. *Id.* (citing *Hansen v. Morgan,* 582 F.2d 1214, 1217 (9th Cir.1978) (finding plaintiffs' complaint, which alleged that defendant's willful and negligent failure to comply with the FCRA unlawfully violated the plaintiffs' right to privacy, stated a valid claim); *Bakker v. McKinnon,* 152 F.3d 1007, 1013 (8th Cir.1998) (upholding a damage award based on emotional distress in an action brought under the FCRA alleging defendant's invasion of privacy into the plaintiff's credit report); *Yang v. Gov't Employees Ins. Co.,* 146 F.3d 1320, 1322 (11th Cir.1998) (noting that the FCRA has the dual purpose of facilitating accurate reporting and of protecting privacy); *Zamora v. Valley Fed. Sav. & Loan Ass'n,* 811 F.2d 1368, 1370 (10th Cir.1987) ("By enacting the FCRA, Congress intended to prevent invasions of consumers' privacy."))

In any event, there is harm here beyond emotional distress. Plaintiff alleges that he was actually denied credit—the overdraft protection on his checking account. Defendant's first argument—that there was no concrete harm, and emotional distress damages cannot stand alone—consequently fails.

Defendant's second argument—that plaintiff did not suffer emotional stress damages sufficiently real and separate enough from those stemming from other sources, notably the episode of identity theft—may be more convincing, but the factual record is insufficient at this time to determine whether Veno meets the standards for actual damages.

### B. *Veno's Cross–Motion for Summary Judgment*

Veno's cross-motion for summary judgment [document # 20] argues that AT&T's conduct amounted to negligence as a mat-

ter of law. Veno also moves for summary judgment regarding his claims under M.G.L. c. 93A and Massachusetts' privacy law, M.G.L. c. 214 § 1B.

### 1. *Defendant's Negligent Violation of the FCRA*

■ The Court cannot grant Veno's first request because Veno has not as of this time sued under the negligence provision of the FCRA—the complaint references only the higher "willful" or "false pretense" standards [7]. Plaintiff is free to amend the complaint to reflect this claim.

### 2. *Violations of M.G.L. c. 93A and M.G.L. c. 214 § 1B*

Veno's memorandum in support of the cross-motion for summary judgment fails to explain in any detail the legal basis for the state law claims. Instead, plaintiff does little more than describe the facts and the legal basis for the FCRA claim, and then states in conclusory fashion that these same facts constitute violations of the Massachusetts statutes as a matter of law.[8] The legal record in this case is thus insufficient for a ruling on this issue.

### III. *CONCLUSION*

AT&T's motion for summary judgment as to plaintiff's Count I is **GRANTED**, and **DENIED** in all other respects. Plaintiff's

Count II is **DISMISSED** on the Court's own motion. Veno's cross-motion for summary judgment is **DENIED** at this time. Plaintiff is free to renew the motion regarding defendant's negligent violation of the FCRA if the complaint is amended to allege a negligence count under the FCRA, 15 U.S.C. § 1681*o*.

### SO ORDERED.

### *JUDGMENT*

For the reasons set forth in the accompanying Memorandum and Order, AT&T's motion for summary judgment as to plaintiff's Count I is **GRANTED**, and **DENIED** in all other respects. Plaintiff's Count II is **DISMISSED** on the Court's own motion. Veno's cross-motion for summary judgment is **DENIED** at this time. Plaintiff is free to renew the motion regarding defendant's negligent violation of the FCRA if the complaint is amended to allege a negligence count under the FCRA, 15 U.S.C. § 1681*o*.

### SO ORDERED.

---

7. As discussed below, and contrary to plaintiff's assertions, a finding of negligence does not create a per se violation M.G.L. c. 93A.

8. Plaintiff argues that the violation of the FCRA constitutes a per se violation of M.G.L. c. 93A, pointing to the Office of the Attorney General's Code of Massachusetts Regulations, 940 CMR 3.16 ("an act of practice is a violation of M.G.L. c. 93A § 2 if . . . it violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of M.G.L. c. 93A, § 2"), and to a case from the Supreme Judicial Court of Massa-

chusetts. *Commonwealth v. Source One Associates, Inc.*, 436 Mass. 118, 763 N.E.2d 42, 47–48 (2002) (upholding judge's finding that obtaining credit reports in violation of the FCRA also violated c. 93A). However, the judge in *Source One Associates* had not found that a violation of the FCRA constitutes a per se violation—instead, he had made specific findings about the deceptive practices of the defendant, and based his ruling on those findings. The SJC looked at the judge's specific findings of deceptive acts, and on the basis of those findings allowed the c. 93A finding to stand.